UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                              :
MARCO BEMEJO *et al.*, individually and on behalf of          :
all others similarly situated,                                :
                                                              :
                              Plaintiffs,                     :        22 Civ. 1427 (JPC)
                                                              :
              -v-                                             :        ORDER
                                                              :
SHAKER CONTRACTORS, CORP. *et al.*,                           :
                                                              :
                              Defendants.                     :
                                                              :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On February 22, 2022, Plaintiffs filed the Complaint that initiated this case, alleging that the compensation they received from Defendants breached various provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"). *See generally* Dkt. 1 ("Complaint").  Each Defendant was served in March 2022.  *See* Dkts. 6-8. Because none of the Defendants entered an appearance in this case, and none answered or otherwise responded to the Complaint, on April 12, 2022, the Court ordered Plaintiffs to move for default judgment.  Dkt. 10.  On May 17, Plaintiffs filed their motion for default judgment, Dkt. 20, as well as an affirmation from their attorney in support of that motion, Dkt. 21 ("Scher Affirmation"), a computation of damages sought, Dkt. 21-9 ("Damages Computation"), and a proposed default judgment, Dkt. 22.  At a subsequent hearing held on June 16, 2022, the Court determined that the allegations pleaded in the Complaint were sufficient to state each of the seven claims advanced therein and that Defendants had notice of all relevant filings and proceedings in this case.  Dkt. 31 at 10:16-20.  For that reason, the Court determined that it would "enter a default judgment as to the three defendants," *id.* at 10:25-11:1, which would "entail liability on all causes of action in the complaint," *id.* at 11:4.

The Court did not enter Plaintiffs' proposed default judgment, however, due to uncertainty about the proper method for calculating the damages Plaintiffs are owed.  *Id.* at 16:23-25 ("I'm going to hold off on issuing a damages award because of this issue.").  Instead, the Court ordered Plaintiffs to submit supplemental briefing addressing the proper method for computing "liquidated damages for late payment violations under New York Labor Law section 191(a)."  *Id.* at 18:8-9.  Subsequently, while reviewing Plaintiffs' submission, the Court identified a further error in Plaintiffs' method of calculating damages, as discussed below.[1]  For the reasons that follow, the Court will not grant Plaintiffs' motion for default judgment in the amount requested.

## I. Regular Rate of Pay

Under both the FLSA and the NYLL, an employee is entitled to be compensated at a rate "one and one-half times the regular rate at which he is employed" for every hour in excess of forty that he works each week.  29 U.S.C. § 207(a)(1); *accord* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2022) ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . . .");  *see also* 29 C.F.R. § 778.107 (2022) ("[O]vertime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed.").  Plaintiffs' First and Second Causes of Action allege that Defendants did not pay them an appropriate overtime wage for the hours they worked in excess of forty hours each week, in violation of the FLSA and the NYLL respectively.  *See* Complaint ¶¶ 102-112; *see also id.* ¶¶ 32, 41, 50, 58, 66, 74, 83.  And because the overtime wage owed to an employee depends on that employee's "regular rate," the damages owed to Plaintiffs on these causes of action therefore depend on the regular rate Plaintiffs were paid.  With one exception,

---

[1] Thus, although at the default judgment hearing the Court stated that "the plaintiffs' motion for default judgment is granted in full, except for now as to their request for liquidated damages for late payment violations under New York Labor Law section 191(a)," Dkt. 31 at 18:6-9, this Order will require changes to components of Plaintiffs' damages computation besides their computation of liquidated damages for late payment violations.

Plaintiffs were each paid a daily rate—that is, a flat sum for each day of work they performed. *Id.* ¶¶ 31, 40, 49, 57, 73, 82. (The exception—Plaintiff Segundo Tacuri—alleges that he was paid an hourly rate. *Id.* ¶ 65. Since his regular rate simply equals that hourly rate, *see* 29 C.F.R. § 778.110(a), the damages owed to him will not be affected by the method of computing the regular rate discussed herein.) But because the "regular rate" under the FLSA and the NYLL is calculated as an hourly rate, *see* 29 C.F.R. § 788.109 (2022) ("The 'regular rate' under the Act is a rate per hour."); N.Y. Comp. Codes R. & Regs., tit. 12, § 142-2.16 (2022) ("The term *regular rate* shall mean the amount that the employee is regularly paid for each hour of work."), Plaintiffs' daily rate must be converted into an hourly rate to determine the overtime rate to which they were entitled (save, of course, for Tacuri, who was paid an hourly rate).

Plaintiffs' proposed method for performing this conversion is to divide the relevant daily rate by eight. *See* Scher Affirmation ¶ 86. Neither the FLSA nor the NYLL, however, authorizes that method of converting Plaintiffs' daily wage into an hourly regular rate.[2] Confusingly, regulations promulgated under federal and state law set forth different rules governing the methods to be used to compute an employee's regular rate of pay. First, under the FLSA, the appropriate method of converting a non-hourly rate into an hourly regular rate generally depends on which non-hourly time period is covered by each payment an employee receives. If an employee is paid "solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is

---

[2] In justification of their approach, Plaintiffs argue that "[i]f the employee is employed solely on a weekly salary basis, the regular hourly rate of pay . . . is computed by dividing the salary by the number of hours which the salary intends to compensate." Scher Affirmation ¶ 84. But this claim is irrelevant to the present case, for the simple reason that Plaintiffs were not employed on a weekly salary basis. Furthermore, in support of their claim Plaintiffs cite only to the NYLL provision requiring employees' overtime rate to equal one and one-half times their regular rate, which on its own says nothing about how the regular rate should be computed. *Id.* Plaintiffs further assert that eight was "the number of hours [Plaintiffs' flat daily] wage was intended to compensate for," *id.* ¶ 86, but they provide no support whatsoever—legal or factual— for the claim that their daily wage was intended to compensate them for only eight hours.

computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a) (2022).  And if an employee's salary "covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent. . . .  Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated [in the subsection governing weekly salaries]." *Id.* § 778.113(b).  By contrast, if an employee is paid on a daily basis, a different method must be employed in computing his regular rate:  "his regular rate is determined by totaling all the sums received at such day rates . . . in the workweek and dividing by the total hours actually worked." *Id.* § 788.112.  As mentioned, Plaintiffs allege that they were paid a daily rate.  Consequently, under the FLSA, Plaintiffs' regular rate must be determined not by dividing the daily rate by eight, as they propose, but rather by dividing the total compensation they received each week by the total hours they worked in that week.

Under the NYLL, the appropriate method for converting an employee's non-hourly rate to his regular hourly rate depends not on the time period covered by the payments he receives but rather on the industry in which he is employed.  Under the minimum wage order covering the hospitality industry, *see generally* N.Y. Comp. Codes R. & Regs. tit. 12, part 146, "[i]f an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." *Id.* § 146-3.5.  The hospitality wage order, however, applies only to an "employer in the hospitality industry," *id.* § 146-1.1(a), which is in turn defined to "include[] any restaurant or hotel," *id.* § 146-3.1(a).  And since the Complaint does not allege that Defendants operated a restaurant or hotel, and since, furthermore, the work it alleges Plaintiffs to have performed, *see* Complaint ¶¶ 27, 36, 45, 53, 61, 69, 78, is not typically performed in restaurants or hotels, those allegations do not justify applying the hospitality industry minimum wage order.

By contrast, the minimum wage order covering "Miscellaneous Industries and Occupations," *see generally* N.Y. Comp. Codes R. & Regs. tit. 12, part 142, applies to all employees other than "(a) employees who are covered by minimum wage standards in any other minimum wage order promulgated by the commissioner; and (b) employees of a nonprofitmaking institution which has elected to be exempt from coverage under a minimum wage order, pursuant to subdivision 3 of section 652 of the Minimum Wage Act." *Id.* § 142-1.1.  The allegations in the Complaint do not include facts through which Defendants would satisfy the definition of a nonprofitmaking institution.  *See id.* § 142-3.13. Nor do they include facts in virtue of which Plaintiffs would be governed by the hospitality industry minimum wage order, *see id.* §§ 146-1.1, 146-3.1, the building services industry minimum wage order, *see id.* §§ 141-1.1, 141-3.1, or the minimum wage order for farm workers, *see id.* §§ 190-1.1, 190-1.3.  Thus, since Plaintiffs were not covered by any other minimum wage order and were not employed by a nonprofitmaking institution, they are covered by the minimum wage order governing miscellaneous occupations and industries.  *See id.* § 142-1.1.  Under that minimum wage order, "[w]hen an employee is paid on . . . any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." *Id.* § 142-2.16.  Thus, under the NYLL, just as under the FLSA, Plaintiffs' regular rate must be computed not by dividing their daily rate by eight, as they propose, but rather by dividing their total weekly earnings by their total weekly hours worked.

New York courts, both federal and state, have recognized that the regulations promulgated under the FLSA and the NYLL require this approach in computing the regular rate of pay for non-hospitality employees who were compensated on a daily basis.  In this District, the issue has been confronted squarely in written opinions only infrequently.  Nonetheless, the one opinion this Court has identified that recognized and decided the question likewise computed the plaintiffs' regular

rate of pay as their total weekly compensation divided by their total weekly hours worked, not as their daily wage divided by eight. *See De La Cruz Moreno v. Happy Angel Nail Spa Inc.*, No. 15 Civ. 10078 (LGS) (GWG), 2019 WL 2438966, at *4 (S.D.N.Y. June 12, 2019), *adopted by* 2019 WL 2717153 (S.D.N.Y. June 28, 2019).  In the Eastern District of New York, however, the question has arisen in written opinions more frequently.  And when it has, plaintiffs' regular rate has consistently been calculated as equal to their total weekly compensation divided by their total weekly hours worked. *See Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 656-57 (E.D.N.Y. 2020) (collecting cases).  And at least one New York trial court has likewise employed this approach when computing the regular rate for employees compensated on a daily basis. *See Islam v. Hossain*, No. CV-16334-10/NY, 2014 WL 3764338, at *8 (N.Y. Civ. Ct. July 11, 2014).[3]  The Court's approach in this case, then, follows the weight of authority.  Under both federal and state law, Plaintiffs' regular rate of pay is their weekly compensation divided by their weekly hours worked.

## II.  Overtime Damages

Plaintiffs allege that they were not paid the higher overtime rate required by both state and federal law.  Complaint ¶¶ 106, 111.  And both state and federal law permit employees to recover wages to which they were entitled by law but which they were not paid.  29 U.S.C. § 216(b) ("Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . .");  N.Y. Lab. Law § 198(1-a) (2022) ("In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment . . . .").  Thus, the damages owed to Plaintiffs depend on the amount by which Plaintiffs' wages were underpaid—the difference between the rate they actually were paid and the

_____

[3] Although the plaintiffs in *Islam* worked at a food cart, 2014 WL 3764338, at *1, the court nonetheless applied the minimum wage order for miscellaneous industries and occupations, *see id.* at *8, which as discussed is the minimum wage order that governs Plaintiffs' compensation.

rate they were entitled to receive by law.  As discussed, for each overtime hour worked Plaintiffs were entitled to be paid a rate of one and one-half times their regular hourly rate, which must in turn be computed by dividing their total weekly compensation by the total number of hours they worked.  The overtime damages due, then, depend on what rate Plaintiffs actually were paid for their overtime hours.  Plaintiffs' proposed method for determining the amount of underpayment is to multiply the number of hours each Plaintiff worked in excess of forty in a given week by that Plaintiff's overtime rate.  *See* Scher Affirmation ¶ 88.  In effect, then, Plaintiffs presume that they were paid nothing whatsoever for any hours they worked in excess of forty each week, and they therefore demand as damages the full wage to which they were entitled for those hours.  In support of that proposal, however, Plaintiffs argue only that "[t]he FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement."  Scher Affirmation ¶ 83.[4]  And as the Court has already noted, Plaintiffs were not compensated through a weekly salary, and thus the rules governing damages computation for plaintiffs who were paid weekly salaries in breach of applicable overtime regulations are simply irrelevant to computing the damages owed to Plaintiffs in this case.

This presumption upon which Plaintiffs rely—that they received no compensation for the overtime hours they worked—is inconsistent with both legal authority and simple mathematics.  Regulations promulgated under the FLSA explicitly address the appropriate measure of overtime damages for employees paid a daily wage, as Plaintiffs were:  such employees are "entitled to extra half-time pay at [the regular] rate for all hours worked in excess of 40 in the workweek."  29 C.F.R. § 778.112.  This approach presumes that an employee paid on a daily basis is paid at his regular rate for each hour he works in the week.  Because employees are entitled to be paid at a higher rate

---

[4] This sentence appears in quotation marks in the Scher Affirmation.  Nonetheless, the Court is unsure of its original source, since it does not appear in the document cited in the Scher Affirmation immediately following that sentence.

for overtime hours, then, the measure of their damages for unpaid overtime is simply the difference between the regular rate and the higher overtime rate, multiplied by the number of overtime hours worked.  And since the overtime rate equals one and one-half times the regular rate, that difference is simply half of the regular rate multiplied by the number of overtime hours worked, not—as Plaintiffs propose—the number of overtime hours worked multiplied by the full overtime rate of one and one-half times the regular rate.

Unlike its federal counterpart, the NYLL does not explicitly instruct courts on what portions of a daily wage they must attribute to an employee's overtime hours in order to determine the wage the employee was actually paid for those hours and, therefore, the overtime damages due. Nonetheless, when awarding NYLL damages to plaintiffs who were paid a daily wage, federal courts in this Circuit have consistently computed overtime damages as being equal not to an employee's overtime hours worked multiplied by his full overtime rate, but rather to his overtime hours worked multiplied by one-half the regular rate, which is the difference between his regular rate and his full overtime rate.  *See Ying Ying Dai*, 490 F. Supp. 3d at 657; *De La Cruz Moreno*, 2019 WL 2438966, at \*5 (citing Affirmation in Support of Order to Show Cause for Default Judgment at 12-17, Dkt. 99, *De La Cruz Moreno*, No. 15 Civ. 10078 (LGS) (GWG) (S.D.N.Y.) (filed Oct. 17, 2018)); *Nuriddinov v. Masada III, Inc.*, No. 15 Civ. 5875 (KAM) (RML), 2018 WL 1251335, at \*2 (E.D.N.Y. Mar. 12, 2018); *Espinoza v. Indus. Glass & Mirror Inc.*, No. 16 Civ. 64 (ARR) (RER), 2016 WL 7650592, at \*5 (E.D.N.Y. Nov. 30, 2016), *adopted by* 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017).[5]

---

[5] *Islam*, the New York City Civil Court opinion addressing damages owed to food cart employees who were paid a daily wage, does award overtime damages equal to overtime hours worked multiplied by the total overtime wage, not equal to overtime hours worked multiplied only by the difference between the regular rate and the overtime wage.  Nonetheless, while "in the absence of a decision by the New York Court of Appeals, the rulings of New York's intermediate appellate courts are at least of persuasive authority, . . . those of a state trial court are usually not binding precedent upon federal courts," *Phillips ex rel. Green v. City of New York*, 453 F. Supp.

Furthermore, the presumption that Plaintiffs were paid nothing for the overtime hours they worked, which is central to their proposed method of computing damages, is mathematically inconsistent with the method for computing the regular rate of pay that is required by law.  An example may illustrate.  Suppose an employee working ten hours per day, six days per week, were paid $100 per day.  That employee's regular rate of pay would then equal his total compensation— six multiplied by one hundred, or $600—divided by his total hours worked—six multiplied by ten, or sixty.  Thus, the regular rate would be $10 per hour.  But if the employee were paid at that rate only for the first forty hours of work, then he would have received only $400 in total compensation, since forty multiplied by ten equals four hundred.  The only way for an employee paid $10 per hour to earn $600 in a week is to work for sixty hours at that rate, since six hundred divided by ten equals sixty.  In short, if an employee is paid an hourly rate equal to his total weekly compensation divided by his total weekly hours, then the hours for which he was paid at that rate must have included all the hours he actually worked, not merely the first forty hours he worked, or else he would have received less compensation than he was actually paid.  Such employees must have been paid at their regular rate for the overtime hours they worked, and the damages owed to them for those hours must equal not the number of overtime hours worked multiplied by the overtime rate, but rather only the overtime hours worked multiplied by the difference between the overtime rate and the regular rate.  Plaintiffs, then, are entitled to one-half the regular rate for each overtime hour worked.

---

2d 690, 744 (S.D.N.Y. 2006) (citation, brackets, and internal quotation marks omitted), and while "the judgment of an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise, the same is not necessarily true of state trial courts," *Gillespie v. St. Regis Residence Club, New York Inc.*, 461 F. Supp. 3d 96, 112 n.10 (S.D.N.Y. 2020) (citations, brackets, and internal quotation marks omitted).  Because the approach taken in *Islam* appears to be an outlier that differs from the approach consistently taken by federal district courts in New York, and because, based on this Court's research, the approach taken in *Islam* appears not to have been endorsed by any higher New York state court, this Court will not follow *Islam* in computing damages.

### III.  Liquidated Damages

The final issue in Plaintiffs' damages calculation concerns the appropriate measure of liquidated damages.  Under the NYLL, "[a] manual worker shall be paid weekly."  N.Y. Lab. Law § 191(1)(a).  Plaintiffs allege, however, that they were paid biweekly; consequently, one-half of each paycheck—that is, the half attributable to the first of the two weeks covered by the paycheck— was paid late, in violation of the law.  Complaint ¶¶ 33, 42, 51, 59, 67, 75, 84.  The NYLL further authorizes an employee to recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."  N.Y. Lab. Law § 198(1-a).  The Appellate Division of New York Supreme Court has held the term "wages found to be due" in this provision encompasses "untimely payment of wages, as well as nonpayment or partial payment of wages."  *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286, 288 (App. Div. 2019).  Consequently, Plaintiffs are entitled to recover liquidated damages equal to the total amount of all wages that were not paid in accordance with the law, including liquidated damages both for overtime wages that were not paid at all and for wages that were paid late.  Plaintiffs have computed the latter category by multiplying the regular rate of pay by the total number of hours worked each week.  *See* Damages Computation at 2, 4, 6, 8, 10, 12, 14.  But even though each Plaintiff worked more than eight hours per day, Plaintiffs compute the regular rate of pay as the daily wage divided by eight, *see id.* at 3, 5, 7, 9, 13, 15, so on this approach each Plaintiff's liquidated damages for late pay exceeds the total amount of the late payments that he actually received.

The NYLL does not authorize this method of calculating liquidated damages.  As noted, under the NYLL employees may recover "liquidated damages equal to *one hundred percent of the total amount of the wages found to be due*."  N.Y. Lab. Law §198(1-a) (emphasis added).  Thus, the amount of liquidated damages available to Plaintiffs is capped at the amount of wages to which they were entitled but which they were not paid (either because no payment was made at all or

because it was made late).  The compensation to which each Plaintiff was entitled over a two-week period may be divided into four categories: (1) pay at the regular hourly rate for each hour of time worked during the first week, (2) an additional sum of one-half the regular rate for each hour of overtime worked during the first week, (3) pay at the regular hourly rate for each hour of time worked during the second week, and (4) an additional sum of one-half the regular rate for each hour of overtime worked during the second week.[6]  Of these four categories, only the third was paid in compliance with the law.  The second and fourth categories were not paid at all, since Defendants did not pay a higher overtime rate for hours worked in excess of forty each week, and the first was paid late, since Plaintiffs received it only with their biweekly pay for both the first and the second weeks.  Thus, because liquidated damages under NYLL cannot exceed "one hundred percent of the total amount of the wages found to be due," N.Y. Lab. Law § 198(1-a), and because the wages due to Plaintiffs are those that fall into categories one, two, and four, Plaintiffs may not recover liquidated damages in excess of the amount of wages that fall into categories one, two, and four.

In their damages computation, Plaintiffs divide liquidated damages into two types: liquidated damages for overtime and liquidated damages for late payment.[7]  *See* Damages Computation at 3, 4, 6, 8-10, 12, 14.  They compute liquidated damages for unpaid overtime as equal to the compensatory damages they are owed for unpaid overtime.  *See* Damages Computation at 2-4, 6, 8, 10, 12, 14.  And, as the Court has explained, the amount of overtime owed to Plaintiffs, which they must be paid as compensatory damages, equals one-half their regular rate multiplied by

---

[6] Some Plaintiffs also allege that they received no payment for work done during their final pay period, *see* Complaint ¶¶ 34, 43, 76, 85, and seek liquidated damages corresponding to those unpaid wages, *id.* ¶ 120.  Because the appropriate method for computing the amount of liquidated damages due for that violation is obvious, the Court omits it from the analysis provided here.

[7] The Court excludes here liquidated damages owed to some Plaintiffs because Defendants failed to pay wages covering the final pay period of Plaintiffs' employment.  *See supra* note 6.  But Plaintiffs are of course entitled to unpaid wages and corresponding liquidated damages for that final pay period.

the number of overtime hours they worked.  Plaintiffs' claim for overtime liquidated damages, then, will allow them to recover an amount exactly equal to the amount of wages falling into categories two and four set forth above.  Since the total amount of liquidated damages cannot exceed the total wages falling into categories one, two, and four, and since Plaintiffs' overtime liquidated damages equal the wages falling into categories two and four, their remaining liquidated damages claim— namely, liquidated damages for late payments—cannot exceed the wages that fall into category one.  And those wages simply equal Plaintiffs' actual hourly rate multiplied by their actual number of hours worked.  Thus, Plaintiffs' liquidated damages for late payments must equal the actual amount paid late—for each week of late pay, the number of hours worked per week multiplied by the regular rate of pay, where the regular rate equals each Plaintiff's weekly compensation divided by his weekly number of hours worked.[8]

At the hearing held on June 16, 2022, Plaintiffs advocated for their proposed method of computing liquidated damages for late payments by arguing that "calculat[ing] the liquidated damages based on the improper amounts that [Defendants] paid" would allow Defendants to "take advantage of not paying [Plaintiffs] properly."  Dkt. 31 at 15:23-25.  As the Court's analysis has shown, however, the method of computing liquidated damages proposed here does not allow Defendants to benefit from their failure to pay overtime as required by law.  To be sure, had Defendants included overtime in the biweekly payments made to Plaintiffs, Plaintiffs' liquidated damages for late payments would be higher:  the amount of wages paid late would include not only the regular rate for each hour worked but also an extra one-half of the regular rate for each overtime hour worked.  Nonetheless, the greater late-payment liquidated damages owed by a hypothetical

---

[8] Plaintiffs' initial damages computation computes liquidated damages for late payments as equal to their total hours worked multiplied by their regular rate of pay.  Damages Computation at 2, 4, 6, 8, 10, 12, 14.  That computation, however, employs the higher, incorrect value for the regular rate of pay.  *Id.*  Thus, to compute liquidated damages properly, the only change required is to use the regular rate as recomputed in accordance with this Order.

defendant who complied with overtime requirements does not show that the actual Defendants in this case have benefited from their failure to pay overtime. For in addition to late-payment liquidated damages the actual Defendants owe an additional category of liquidated damages for unpaid overtime—damages they would not have owed had they paid overtime as required by law. Thus, Defendants will not benefit from failing to pay required overtime; instead, some of the liquidated damages that would have been owed for late payments had Defendants paid overtime have simply been recategorized as overtime liquidated damages.[9] Indeed, far from benefiting Defendants, their failure to pay overtime has increased the total amount of their liability. Had they merely paid overtime late they would be liable only for liquidated damages corresponding to half the overtime Plaintiffs earned, since only one-half of each payment was late—namely, the amount attributable to the first of the two weeks covered by each payment. By contrast, since Defendants paid no overtime at all, they must pay double the amount of liquidated damages, equal to the total amount of overtime Plaintiffs should have been paid. And they must also pay compensatory damages equal to the total amount of overtime Plaintiffs should have been paid, which would not be due at all had Defendants simply made overtime payments late.

## IV. Conclusion

For the reasons stated on the record at the hearing on June 16, 2022, Plaintiffs are entitled to a default judgment on all counts of the Complaint. But for the reasons given in this Order, the damages Plaintiffs seek in their default judgment motion are not authorized by the FLSA and the NYLL. Consequently, by December 12, 2022, Plaintiffs are ordered to submit a revised damages

---

[9] To be sure, Defendants violated the law twice over: they failed to pay overtime as required, and even had they paid it they would have failed to pay it at the required time. But the NYLL authorizes liquidated damages only equal to "one hundred percent of the total amount of the wages found to be due." N.Y. Lab. Law § 198(1-a). Thus, even though some wages due were due because the payments Defendants made violated two separate provisions of the NYLL, Plaintiffs cannot therefore recover twice for the single amount of wages due.

calculation performed in accordance with this Order, and to submit a revised proposed default judgment based on that calculation.  Plaintiffs are further ordered to appear telephonically at a conference at 11:30 a.m. on December 21, 2022 to confirm the recomputed damages award.  At the scheduled time, counsel for Plaintiffs should call (866) 434-5269, access code 9176261.

     SO ORDERED.

Dated: November 28, 2022
     New York, New York

_____
JOHN P. CRONAN
United States District Judge